43 So.2d 821

## SMITH v. STATE.

### 1 Div. 351.

Supreme Court of Alabama.

Jan. 19, 1950.

Sydney S. Pfleger, Mobile, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

STAKELY, Justice.

Charley Smith was indicted, tried and convicted of murder in the first degree. He received the death penalty. The case comes to this court under the Automatic Appeal Act. Code 1940, Tit. 15, § 382(1) et seq.

On Sunday, July 11, 1948, at about two o'clock in the morning Alice Hyman, who lived at 1754 Limerick Street, a little traveled street in the City of Mobile, was awakened by her young daughter with whom she was sleeping. She got up and saw a cab standing in the street with the lights off in front of the house. No one was near the cab, but she heard a groan, and with the aid of her flashlight discovered a man lying in the weeds in a nearby ditch. He did not respond to her questions. So she called the police.

After their arrival the police saw to it that the unconscious man, who was Monroe Young Jackson, a taxicab driver, was placed in an ambulance and carried away. He never recovered consciousness and died of severe wounds about his head. There were seventeen major wounds on the head and many lesser wounds. His skull was crushed behind the ear and his scalp was laid bare to the skull. His nose and jaw were crushed. According to Dr. Grubbs, State Toxicologist, the wounds showed that they were inflicted by a heavy blunt instrument.

On Monday, Tuesday and Wednesday nights before the killing Charley Smith had occupied a one room house in the backyard of Alice Hyman. Upon examination of the cab by the police they found blood on the rear seat, rear door and up in the top of the upholstering. The front seat was a mass of blood. Blood was on the windshield and up over the sun visors. They found a yellow cab driver's cap lying on the front seat opposite the driver's seat, with the strap broken and the button off the cap on the floor board. They found a seaman's identification card, that is called an

I.D. card. They also found a laundry check, a C.I.O. union card and a union picket card issued at Galveston, Texas. These articles were shown to Alice Hyman, who thereupon took the police to a house known as 301 Dearborn Street in the City of Mobile.

The first story of the house on Dearborn Street was occupied by a dealer in second-hand furniture and appliances. He was out of the city at the time. There were a number of stoves on the back porch. Alice Hyman, who was familiar with the place, led the police to the rear of the house and up steps to the rooms that were in a part of the attic. They then broke into the room on the right and with their flashlights found Charley Smith in bed with a woman named Margaret Myles, with whom he had been living from time to time during the previous seven months. Charley Smith had on shorts with blood on them and in a tub of water in the room were a man's clothes with blood on them. They were his clothes. In the top drawer of the dresser they found a billfold with nine dollar bills therein and also a handkerchief with small change tied up in it. On direction from Charley Smith, another billfold and a wrist watch were found in a stove on the back porch. These articles belonged to the deceased.

Charley Smith was arrested and signed a written confession to the killing. According to his statement and also according to Margaret Myles at about 7:30 of the night of the killing, she was not feeling well so she and Charley Smith went to the City Hospital where he left her. They went in a cab and she paid the fare. She did not see him again until he came to her room at about 2:30 that night.

There were no eyewitnesses to the killing. According to the statement of Charley Smith after he left the hospital about 10:00 o'clock, he went to several places including the L. & N. Station where he tried to find the brother of Margaret Myles. Not finding him, he called a taxi at about 11:30 and told the driver to take him to Limerick Street. When he reached his destination, according to his statement, he asked the cab driver "How much I owe you" and he said "Give me two and a half", and I said "Two and a half, what for?" He said "That is the fare and I had only two forty. I reached in my back pocket like I was going to get my wallet and I had a bottle in my pocket which I had gotten from under the house where I live earlier in the evening." "So I hit him in the face on the right side with the bottle and he grabbed me." Further according to his statement, he reached in the right back pocket of deceased and got his wallet and reached in his shirt pocket and got a pack of cigarettes and the rest of his money in bills and change and also a wrist watch which was in his shirt pocket."

Just before the preliminary hearing Charley Smith stated that his written statement was correct except that he had hit the deceased with a piece of pipe. The day after the killing a piece of pipe was found in the weeds on a nearby lot with blood on it. Also there was found near it a piece of paper with blood on it. The paper came from the window of the room he had occupied on Limerick Street. He admitted that he had torn the paper loose and used it to wipe the blood off the instrument with which he hit the deceased.

Charley Smith at the time was twenty-three years of age and was a seaman who had come to Mobile from Galveston, Texas. In Texas he had served a term for burglary. He was out of work and had drawn no pay for twenty days. He was trying to draw "some pennies" from unemployment compensation. He had served in the Navy and was taking steps to re-enlist.

According to his testimony given from the witness stand, the cab driver grabbed the defendant's wallet out of his hand. The cab driver was under the steering wheel when this occurred. According to the defendant he was on the back seat. Defendant then jumped over on the front seat and deceased hit defendant in the crotch with a pipe. Defendant then snatched the pipe from deceased and proceeded to hit deceased with the pipe.

■ I. After the defense had rested, the State called to the stand Bruce Etheridge who had previously testified in

the case. It was disclosed that the witness had talked to the solicitor and Talley Rollings, a captain on the police force in the solicitor's office just before the witness had gone back on the stand. Although the rule had been invoked, Capt. Rollings, also a witness for the State, was excused from the rule at the request of the State and sat with the solicitor during the trial. Motion was made to exclude the testimony of Bruce Etheridge and to enter a mistrial. The same situation developed with reference to the testimony of Russell Campbell, witness for the State. The court overruled the objection and motions of the defendant. There was no error in these rulings. This is a matter which rests in the sound discretion of the trial court. Teague v. State, 245 Ala. 339, 16 So.2d 877; Clark v. State, 240 Ala. 65, 197 So. 23.

II. The introduction in evidence of the articles found in connection with the difficulty were proper. These articles, including wearing apparel of either the deceased or of the defendant, were competent. Any instruments or weapons used in the difficulty were legal evidence. Each had a tendency to shed light on a material inquiry. Puckett v. State, 213 Ala. 383, 105 So. 211; Grissett v. State, 241 Ala. 343, 2 So.2d 399.

III. The confession of the accused was properly admitted in evidence. While the accused claimed coercion, the evidence of the State as to the voluntary character of the confession was amply sufficient to warrant its admissibility. Phillips v. State, 248 Ala. 510, 28 So.2d 542. The accused was not treated in such manner as to warrant a finding that his confession was involuntary. When first arrested he was handcuffed, but this is no unusual practice when the prisoner apparently is guilty of a vicious murder. He was imprisoned in the usual manner of one charged with or suspected of first-degree murder. There is no evidence of brutal treatment, nor is any claimed. Incarceration in the ordinary manner and questioning by the authorities does not render the confession involuntary. Taylor v. State, 249 Ala. 130, 30 So.2d 256; Ex parte Taylor, 249 Ala. 667, 32 So.2d 659; Taylor v. State of Alabama, 335 U.S. 252, 68 S.Ct. 1415, 92 L.Ed. 1935.

We do not consider that the case of Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224, cited by appellant, is applicable to the case at bar. Here the accused is twenty-three years of age, educated through the tenth grade, is a seaman and served in the Navy. He also served a term in the Texas penitentiary for burglary. It cannot reasonably be said that he has not had ample experience to know his rights. In fact as the confession was being typed, he called attention to a mistake of the typer when the word "wallet" was typed when it should have been "watch". In addition to the foregoing, the accused testified that he killed the deceased and his testimony was in most of the material aspects identical with the confession. Ray v. State, 248 Ala. 425, 27 So.2d 872.

IV. There was no error in admitting testimony to show the trip to the hospital and other movements of the accused subsequent thereto, even though the killing was some hours later. All the attendant circumstances leading up to and eventuating in the homicide form a part of the res gestae. Collins v. State, 138 Ala. 57, 34 So. 993.

V. The court in its oral charge and in charges given at the request of the defendant fully and correctly instructed the jury as to the law involved in the case. It is sufficient to say that the refused charges were covered in the court's oral charge or in the given charges. § 273, Title 7, Code of 1940.

We have carefully considered the entire record and find no error therein. The judgment of the lower court must be affirmed.

Affirmed.

BROWN, FOSTER, LIVINGSTON, LAWSON and SIMPSON, JJ., concur.