229 So.2d 475

**TIMMERMAN INS. AGENCY, INC. and W. F. Timmerman, Inc.**

v.

**Ted MILLER and Felice Miller.**

**4 Div. 317.**

Supreme Court of Alabama.

Sept. 25, 1969.

Rehearing Denied Jan. 8, 1970.

Tipler & Fuller, Andalusia, for appellees.

Jas. M. Prestwood, Andalusia, for appellants.

SIMPSON, Justice.

The plaintiffs below, the Millers, suffered a loss of their property by fire. They sued the defendant, an insurance broker, charging negligence in failing to notify the plaintiffs of his failure to procure the renewal of existing insurance written by him as the agent or broker of the plaintiffs.

The jury returned a verdict in favor of the plaintiffs in the amount of $4,500.00. The defendant appealed.

The evidence in this case in many instances is in sharp conflict. The following seems to be conceded:

Since December 6, 1961, the Timmerman Insurance Agency has been writing insurance coverage on farm property owned by the plaintiffs, insuring their farm property from fire and other perils. The initial policy was written on Reliance Insurance Company of Philadelphia, Pennsylvania. Thereafter from year to year as this initial policy came up for renewal, it was renewed by Timmerman, who billed the Millers for the renewal premium. It is not disputed that all premiums were paid when due.

In 1965 the Millers constructed two hay barns on property that they owned. Timmerman insured these two barns and contents by separate endorsements to existing policies, one endorsement being dated September 27, 1965, and the other September 29, 1965, such endorsements insuring each barn and contents for $4,500.-00.

These endorsements were to an existing policy which had a renewal date of December 6, 1965.

On January 1, 1966 fire destroyed one of these barns and the contents thereof. Timmerman was notified of the loss on either January 2 or January 3, 1966.

Plaintiff Miller's father testified that he notified the Timmerman Agency on January 3 that fire had destroyed the barn and the contents and requested an adjuster. No adjuster was sent and, according to the senior Mr. Miller, he was advised by the Timmerman office on January 5 that the policy covering the barn had lapsed.

It was the contention of Mr. Timmerman that he had, in fact, notified plaintiff Miller of his inability to secure coverage on his property prior to the loss. A copy of a letter which Mr. Timmerman contended he had addressed to the Millers and dated December 31, 1965, was introduced into evidence, such letter advising the Millers of his inability to procure a renewal on this property from Reliance Insurance Company, and his further inability to secure coverage on the property from any other company. Mr. Timmerman contended that this letter was mailed by him on December 31, 1965, though the postmark on the envelope showed that the letter was postmarked on January 3, 1966. Of course, January 3 was two days after the loss had been suffered. This letter was received by the Millers, who resided in California, on January 7, 1966. It was the contention of the Millers that January 7, 1966 was their first notice from Timmerman that the property was not covered.

On the occasion of the second deposition taken of Mr. Timmerman by attorneys for the Millers, Mr. Timmerman testified that he had mailed a letter to the Millers on December 2, 1965, notifying them of his

inability to obtain a renewal of the coverage from Reliance Insurance Company and his inability to obtain coverage elsewhere. The Millers denied having ever received this letter, though Timmerman produced a carbon copy.

It was Mr. Timmerman's contention that he had attempted to secure coverage on the destroyed property from several insurance companies, but had been unable to do so, presumably such efforts having taken place in the latter part of November, according to his letter of December 2, the letter which the Millers contend they never received, or during the month of December, according to his letter of December 31st, 1965.

The Millers contended that the first notice they had that there was no coverage on the destroyed barn came from the senior Mr. Miller, who telephoned the plaintiffs Miller on January 5, 1966, informing them that there was no coverage. On that same day, January 5, 1966, the plaintiffs secured coverage on the remaining barn and other farm properties. Two insurance agents testified that the destroyed property was insurable on December 6, 1965.

 There is no question but that when an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom. (See annotation at 29 A.L.R.2d 171.)

In this connection the trial judge charged the jury as follows:

"The law in Alabama, insofar as I have been able to determine, is that where an insurance agent or broker enters into an agreement with a property owner to secure certain insurance upon that property, and after entering into that agreement fails to secure the insurance, and then negligently fails to notify the property owner of his inability to secure the insurance, and thereafter the property owner suffers a loss because of the lack of insurance and because of the negligence of the insurance agent or broker in notifying the property owner of his inability to secure the insurance, then the property owner is entitled to recover damages of the insurance agent or broker in the same amount as he would have been entitled to have received from the insurance company had the insurance been in force and effect.

"The law of Alabama also goes further and says a course of conduct or past dealings between the parties does not create a presumption of an agreement to insure. The effect of that is that you cannot infer an agreement to procure insurance simply because the insurance has been procured for a property owner in the past.

"You must find from the evidence in this case, or be reasonably satisfied from the evidence, before you can return a verdict in favor of the plaintiffs in this case, you must find that there was an agreement of some type between the plaintiffs and the defendant whereby the defendant was to procure insurance for the plaintiffs on their property. Then you must find that he failed to procure that insurance, and then you must find that he negligently failed to notify the plaintiffs of his inability to secure the insurance, and that that negligence proximately caused the plaintiffs' losses."

We believe the foregoing is a correct statement of the law. (See Wade v. Robinson, 216 Ala. 383, 113 So. 246 and Alabama Red Cedar Company v. Tennessee Valley Bank, 200 Ala. 622, 76 So. 980.) See also Appleman, Insurance Law and Practice, Vol. 16, § 8841, where it is stated:

"An insurance broker is the agent of the insured in negotiating for a policy, and owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting insurance. * * *

And while such broker is not obligated to assume the duty of procuring a policy, without consideration for his promise, he must exercise ordinary care in the performance of such duty when assumed, * * *. Where a broker undertakes to place insurance for another, it is his duty, in case he is unable to do so, to seasonably notify his principal, * *."

Zeff Distributing Company v. Aetna Casualty & Surety Co., 389 S.W.2d 789 (Missouri, 1965); Marano v. Sabbio, 26 N.J. Super. 201, 97 A.2d 732 (1953); Burroughs v. Bunch, 210 S.W.2d 211 (Tex. Civ.App., 1948); Bates v. Bowles White & Co., 56 Wash.2d 374, 353 P.2d 663 (1960)—these cases hold that a broker or agent is liable for failure to notify the owner that he cannot obtain insurance. In Wiles v. Mullinax, 267 N.C. 392, 148 S. E.2d 229 (1966) it was held that if a broker or an agent is unable to procure insurance he has undertaken to provide, he impliedly undertakes, and it is his duty, to give timely notice to his customer, the proposed insured, and when the broker fails to give such notice he renders himself liable for resulting damages which his client suffered from lack of insurance. Consistent with that holding is Backus v. Ames, 79 Minn. 145, 81 N.W. 766, where the court said:

"When a broker undertakes to place insurance for another, it is his duty, in case he is unable to do so, to seasonably notify his principal. He is bound to proceed with all reasonable diligence to ascertain whether he can place the insurance, and, in case of failure, he must give the notice, but the duty of giving the notice does not arise until after the lapse of a reasonable time in which to make due efforts to place the insurance."

In this case, we believe that a jury question was made as to whether or not Mr. Timmerman had agreed to undertake to secure insurance on the property involved. Further we believe that a jury question was made on the issue of whether or not Mr. Timmerman was negligent in failing to notify the Millers of his inability to secure such insurance. Therefore, there was no error, as claimed by appellant, in the trial court's refusing to give the affirmative charge with hypothesis as requested by the appellant.

Much of appellant's brief assumes that this is a suit on a contract. For example, his proposition of law No. 2 is as follows: "An action ex contractu cannot be joined with an action ex delicto in the same count." No. 3, "Whatever may be the rule in some other states, it is settled in Alabama that custom or usage cannot be looked to to prove or establish a contract." No. 4, "The burden was on the plaintiff to show by his pleading that the parol contract upon which he based his action was supported by a consideration." No. 5, "Where an insurance company through a duly authorized agent has entered into a parol contract for insurance, the right of action for breach thereof is against the company and not against its agent." No. 6, "An option holder cannot enforce it until he elects to and binds himself to perform it, thereby transforming it to a mutual contract, whereas before such action it was unilateral. A proper notice of such election is usually sufficient to that end, declaring such election as thereby becoming obligated to purchase." No. 7, "An acceptance of an offer to allow credit, if one was made, is as essential to make a valid agreement for credit to change a conditional delivery of an insurance policy to an unconditional delivery, as it is to make any other contract. Such an acceptance could not be merely a mental act or state of mind as contended by the plaintiffs but would require a promise to pay made known in some manner to the defendant." No. 9, "The policy of fire insurance was and is a personal contract between the insuror and the insured, and not a contract in the sense that runs with the property."

Inasmuch as the sole count involved in this lawsuit was ex delicto, we do not believe the foregoing propositions material.

■ The appellant contends the trial court erred in overruling his demurrer to Count 1–B, the count upon which the case was tried. It is the contention of the appellant that the count was demurrable in that it refers to the defendant as "they" when, to be grammatically correct, the pronoun "he" should have been used. We do not believe this rendered the count demurrable, it being perfectly clear that the pronoun "they" referred to the defendant.

■ Essentially what we have here is a suit filed by the plaintiffs charging the defendant with negligence in failing to notify the plaintiffs of his inability to secure insurance on the property of the plaintiffs, after having assumed the duty to secure such insurance. As noted elsewhere, the evidence on every issue was in sharp conflict. There was evidence from which the jury could have concluded that the defendant undertook to secure insurance on property owned by the plaintiffs, and that he failed to do so, and that he negligently failed to inform the plaintiffs of his failure to do so. The defense made by the defendant was that he had in fact notified the plaintiffs of his inability to secure coverage. Introduced into evidence was a copy of a letter purportedly written by the defendant and addressed to the plaintiffs and dated December 2, 1965 (three days before the existing policy expired), which the plaintiffs denied receiving. Thus the issue of whether or not the plaintiffs had been notified in a timely manner went to the jury. The trial court properly charged the jury as to the law controlling in the case. The jury believed the plaintiffs' version and returned a verdict in their favor.

While a great many assignments of error are made, essentially the appellant contends that error occurred when the trial court overruled its demurrer to the complaint as last amended. We do not believe this assignment is well taken. It is next contended that the trial court erred in refusing to grant at the request of the defendant the general affirmative charge with hypothesis. As noted above, no error occurred here.

It is next contended by the appellant that the trial court erred in permitting witness Miller (father of plaintiff Ted Miller) to testify that he had notified the Timmerman Agency by telephone of the loss. It is the contention of the appellant that this court's holding in Yancey v. Ruffin, 281 Ala. 633, 206 So.2d 878 (1968) precludes any evidence of a telephone conversation. We do not agree that is the holding in *Yancey*.

We note the record shows the following occurred:

"Q Did you come up and tell them or did you call, or how did you notify them?

"A I called the office.

'Q Did you talk with Mr. Timmerman?

"A No.

"Q Who did you talk with?

"A Some lady.

"Q A lady there in the office?

"A Yes, sir.

"Q What, in substance, did you tell her and what, in substance, did she tell you?

"A I told her that the barn had burned and that I would like for her to make arrangements for an appraiser

"Q And what, in substance, did she tell you?

"MR. PRESTWOOD: We object.

"THE COURT: Overrule.

"A She said she would."

Objection came to the question: "And what, in substance, did she tell you?" (meaning the lady who answered the telephone at the Timmerman Agency). The

court overruled objection to this question and the witness was allowed to state: "She said she would."

■ There is no error to reverse where the error, if any, in overruling the objection is harmless. In this case, the fact of the loss was undisputed, and since the defendant freely admitted receiving notice of the loss, the error, if any, is harmless.—Rule 45, Revised Rules of the Supreme Court.

■ The next objection made by the appellant is that the court erred in not allowing the appellant to cross examine the plaintiff with regard to an investigation made by an attorney employed by the plaintiffs prior to the filing of the lawsuit. It goes without saying that any communications between the plaintiff and his attorney are privileged and the court properly sustained the plaintiffs' objection to this line of cross examination.—Title 7, § 438, Code of Alabama.

While there are a great many more assignments of error, many were not argued, or were argued in bulk, or were argued without any citation of authority. We have read the record and have attempted to decipher the contentions of the appellant. To the best of our ability we believe the foregoing responds to the points made by appellant. We find no error to reverse. Essentially, this case presented a dispute as to the facts. One side contended one thing; the other side another. It was a proper case to be submitted to the jury. Its verdict was not disturbed on motion for new trial and should not be here.

Affirmed.

LIVINGSTON, C. J., and COLEMAN and BLOODWORTH, JJ., concur.