250 So.2d 605

**Robert Luther NEAL**

**v.**

**STATE.**

4 Div. 25.

Court of. Criminal Appeals of Alabama.

March 9, 1971.

Rehearing Denied April 6, 1971.

Alto V. Lee, III, and William L. Lee, III, Dothan, for appellant.

MacDonald Gallion, Atty. Gen., and George W. Hodges, Jr., Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant, Robert Luther Neal, was convicted of larceny by trick. He was sentenced to serve ten years in the penitentiary.

Defendant was indicted jointly with one Ann Smith. A severance was granted and defendant was tried separately. The evidence is set out in Smith v. State, Ala. Cr.App., 46 Ala.App. 233, 239 So.2d 904; and is adopted as the evidence in this case. Since the cause must be reversed on another ground the evidence will not be discussed. Suffice it to say that the trick by which the money was obtained is known as "flim-flam" or "pigeon drop," which "essentially it is performed by two operators, ostensibly strangers to each other, and the victim is persuaded to turn over to one of the operators a sum of money to demonstrate his trustworthiness as a prerequisite to obtaining some easy money. After the victim has turned over his money the operators disappear and the victim receives nothing." Few v. United States, D.C.App., 248 A.2d 125 (1968).

Gerald Grabill, an agent of the Federal Bureau of Investigation, in his examination on voir dire outside the presence of the jury, stated that he and other agents went to defendant's home in Montgomery, Alabama, on July 26, 1968, to arrest him on a charge of flight from the State of Georgia to avoid prosecution. Defendant met them at the door where the officers arrested, handcuffed and "searched him right there, for anything on his person and we asked him whether he had any weapons in his possession. He said, yes, and he went immediately to the back bedroom and we followed him, but before he could reach in his suitcase, we came up with a loaded revolver he was reaching in his suitcase for. * * * One of the other Agents reached and got the weapon before he did, * * *."

The officers then searched a closet in the bedroom and found in a brief case "play-money; numerous road maps; mileage guides; numerous envelopes. There are some race-track tickets in the envelope; there are blank materials there, wrapped up in a brown paper sack, you might say. There's manila envelopes; green-stamps; scotch tape; rubber-bands; scissors. * * * this type of evidence is that of a 'pigeon-drop'." The officers had no warrant for the search.

These articles were admitted in evidence against appropriate grounds of objection. The court announced that defendant's objections and motions to exclude were overruled "mainly upon the holding of the United States Court of Appeals * * * in the case of United States ex rel Mahoney v. Lavalle, 396 F.2d 887 (1968)."

In Mahoney, supra, petitioner was arrested in his apartment. An accompanying warrantless search which revealed a gun in the building basement was held valid.

Neal was tried before the Supreme Court rendered the decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685. Chimel restricts a warrantless search to the arrestee's person and the "area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." It prohibits "routinely searching any room other than that in which an arrest occurs —or, *for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself.*"

The rule of Chimel "is not retroactive even as to cases still in the process

of direct review." Lyon v. United States, 416 F.2d 91 (Fifth Circuit 1969); United States v. Bennett, 409 F.2d 888 (Second Circuit 1969); Williams v. United States, 418 F.2d 159 (Ninth Circuit 1969); People v. Edwards, 80 Cal.Rptr. 633, 458 P.2d 713.

Since Chimel is not to be applied retroactively, Mahoney was authority at the time of trial for the court's ruilng, so far as the physical scope of the search was concerned.

But in Mahoney the defendant was arrested on a charge of robbery. The search for the gun used in the robbery was held to be incidental to the arrest.

■ In Amador-Gonzalez v. United States, 391 F.2d 308 (1968) the court said:

"A search incident to an arrest must have as one or more of its purposes the discovery of (1) the fruits of the crime; (2) instrumentalities used to commit the crime; (3) weapons or like material which put the arresting officer in danger or might facilitate escape; (4) contraband, the possession of which is a crime * * * and, by a recent decision, (5) material which constitutes evidence of the crime or evidence that the person has committed it. * * * Purposes 4 and 5 * * * require probable cause as a predicate for search."

See also Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Humphrey, (Tenth Circuit) 409 F.2d 1055; McCurdy v. State, 42 Ala.App. 646, 176 So.2d 53. Of course, if during a lawful search the police find evidence of another offense not related to the crime for which a person is being arrested, it may be lawfully seized.

■ The crime for which the defendant was arrested was flight to avoid prosecution. There are no fruits of this offense. It is not contended that the officers were searching for weapons which might put them in danger or by which an escape might be effected, or evidence to prove flight. The search, not being incidental to the arrest, was invalid. The evidence obtained by the illegal search was not admissible in evidence.

■ The defense was an alibi. Defendant's daughter testified her father was in Montgomery and Fort Walton Beach, Florida, on July 9, 1968, the date of the alleged offense.

State's witness Officer James Deal testified in rebuttal that he delivered defendant to the jail in Dothan after his arrest. At that time he took defendant's belongings from him, one of the items being a credit card issued by Texaco Oil Company to R. L. Neal. The numbers on the card were 56 872 11 25 9.

Girard L. Fischer testified he was employed by Texaco, Incorporated, at its Credit Card Center, Houston, Texas; that he has under his supervision and control the micro-film records of invoices charged to certain accounts; that when a charge is made on a ticket the original invoice is given to the customer. The cardboard or billing copy is sent from the dealer to the bulk plant from where it is forwarded to the Credit Card Center where it is billed to the customer, micro-filmed and mailed to the customer; that he has an account to R. L. Neal, credit card number 56 872 11 25 9, address 739 Highway Boulevard, Fort Walton, Florida; that a credit report was run on R. L. Neal at that address before the credit card was issued; that the credit report is in the name of Robert Luther Neal; that State's Exhibit No. 2, is the billing copy of a Texaco purchase in the amount of $5.50, made at Jack's Texaco, Dothan, Alabama, July 9, 1968, signed R. L. Neal; that it is an exact photo-copy of the micro film of the original invoice and the account number on it is 56 872 11 25 9.

 

On cross examination the witness stated his personal knowledge is limited to the file; that he did not know who had possession of the courtesy card on July 9, 1968, but there was no notification of a lost or stolen credit card; that the date of purchase is recorded only as 7/9/68, and if the dealer failed to change the date on the imprinter the purchase could have been made on another date.

We are of opinion State's Exhibit No. 2 was introduced without error and was not subject to defendant's objections that it was not in the nature of rebuttal testimony; incompetent, irrelevant and immaterial; not germane to the issues; sheds no light on the inquiry of defendant's guilt or innocence; not properly identified as a record of defendant and not the highest and best evidence.

■ Generally, proof of commission of other offenses is not admissible against a defendant accused of a separate crime, Mason v. State, 259 Ala. 438, 66 So.2d 557.

■ In the present case the court's unequivocal instruction to the jury to disregard a volunteered statement of the witness Malloy, removed its prejudicial effect.

Other questions argued as error probably will not arise in the event of another trial.

For the error pointed out herein the judgment is reversed and the cause remanded.

Reversed and remanded.

ALMON, Judge (dissenting).

Undoubtedly, this search incident to a lawful arrest would have been illegal under the holding of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. However, the majority correctly states that the rule in Chimel is not retroactive and consequently does not apply to the search in this case. This means then that United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct.

430, 94 L.Ed. 653, and other United States Supreme Court decisions construing Rabinowitz are controlling here. Compared to Chimel the constitutional area under the Rabinowitz standard in which a search incident to a lawful arrest could be made was very broad, ranging to methodical searches of an entire house where an arrest took place. See Chimel, supra, p. 766.

The last word from the United States Supreme Court on its interpretation of Rabinowitz came in Chimel as follows:

"It would be possible, of course, to draw a line between Rabinowitz and Harris on the one hand, and this case on the other. For Rabinowitz involved a single room, and Harris a four-room apartment, while in the case before us an entire house was searched. But such a distinction would be highly artificial. The rationale that allowed the searches and seizures in Rabinowitz and Harris would allow the searches and seizures in this case. * * *"

It is my view that this was a permissible search and the cause should be affirmed.