317 So.2d 331

**In re Thomas William YELTON**

**v.**

**STATE of Alabama.**

**Ex parte STATE of Alabama ex rel.
ATTORNEY GENERAL.**

**SC 869.**

Supreme Court of Alabama.

Aug. 8, 1974.

Rehearing Denied Sept. 12, 1974.

David T. Hyde, Jr., Evergreen, for respondent.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for petitioner, the State.

MERRILL, Justice.

The defendant was convicted of murder in the first degree and sentenced to life imprisonment. He appealed and the Court of Criminal Appeals reversed because the sheriff, an investigator and witness in the case, was in charge of the jury. *Yelton v. State,* 50 Ala.App. 168, 277 So.2d 912. We denied certiorari, 291 Ala. 804, 277 So.2d 916.

The second trial resulted in the same sentence and the defendant again appealed. The Court of Criminal Appeals again reversed and we granted the petition for certiorari.

The opinion of the Court of Criminal Appeals states:

"Error to reverse and remand in this appeal lies in the admission of secondary evidence over an appropriate and timely objection of the appellant, which was overruled."

The opinion also states that the original of Exhibit 1 was on file in the Court of Criminal Appeals at the time of the second trial.

On application for rehearing, the court wrote in part:

"Appellant's alleged fingerprints on the window ledge or sill were material evidence on the issue of appellant's presence vel non in the home of the Hendersons on their return from Opp."

The point the State makes is that error in admitting illegal testimony may be rendered harmless by subsequent or prior legal testimony to the same effect.

The deceased, Phillip Henderson, was killed in his home on Sunday morning, December 19, 1971, between 2:00 and 4:00 A. M. after he and his wife had returned from a Christmas dance at Opp. The only purpose of introducing the fingerprints of the defendant was to show that at some time he had been present in the house. The opinion shows that the deceased's wife testified that the defendant was in their home and killed her husband. The appellant's testimony was that he was in their home early that morning after Mrs. Henderson came after him and took him to their home. Thus, the undisputed testimony from both the State and the defendant is that the defendant was in the home either at the time of, or soon after, the shooting. This was far stronger evidence of the defendant's presence in the house than the finding of fingerprints, which could have been made at any time.

■ The rule is that testimony apparently illegal upon admission may be rendered prejudicially innocuous by subsequent legal testimony to the same effect or from which the same facts can be inferred. *East Alabama Express Co. v. Dupes,* 271 Ala. 504, 124 So.2d 809.

■ It has also been held that the defendant is not prejudiced by testimony of a witness which related to uncontradicted matters. *United Sec. Life Ins. Co. v. St. Clair,* 41 Ala.App. 243, 130 So.2d 213, cert. den. 272 Ala. 711, 130 So.2d 219; *Timmerman Ins. Agency, Inc. v. Miller,* 285 Ala. 82, 229 So.2d 475[4].

■ The admission of evidence though it be incompetent if it be of undisputed facts, is harmless. *Coplon v. State,* 15 Ala.App. 331, 73 So. 225.

■ The defendant cannot complain of the admission of improper evidence where he himself testified to the same facts. *Coplon v. State, supra,* 7 Ala.Dig., Criminal Law, ☞1169(2).

This court has held that even though there may have been error in admitting a confession, "such error was cured by appellant's own admissions when he testified as a witness in his own behalf." *Hardie v. State,* 260 Ala. 75, 68 So.2d 35; *Chandler v. State,* 283 Ala. 29, 214 So.2d 306, and the many cases there cited.

■ For any or all of the foregoing reasons, the trial court's action in permitting the introduction of the fingerprint card, Exhibit No. 1, into evidence was not reversible error.

■ We cannot agree that the failure to request the original fingerprint card under Supreme Court Rule 51 was sufficient reason to reverse the judgment of conviction.

This disposes of the ground urged by the State on certiorari for reversal of the judgment of the Court of Criminal Appeals and that judgment must be reversed. In view of the fact that that court will again consider this case we think it proper to address ourselves to the fundamental question in the case, which is not the application of the harmless error rule, but the admissibility of the copy of the fingerprint card, Exhibit 1.

■ Where there is no dispute about the facts, this court may go to the full record for a more complete understanding of those features treated in the opinion of the

Court of Criminal Appeals. *Johnson v. State,* 287 Ala. 576, 253 So.2d 344; *Wilbanks v. State,* 289 Ala. 171, 266 So.2d 632; *Nixon v. State,* 291 Ala. 657, 286 So. 2d 315. Here, there is no dispute about the fact that the trial court admitted Exhibit 1 into evidence.

The record shows that Chief Deputy Sheriff Worthington testified that he had taken thousands of people's fingerprints and on December 22, 1971, he took defendant's fingerprints.

Mrs. Sandra Day, the official court reporter at both trials, testified that Exhibit 1 was a photostatic copy of the original fingerprint card which was introduced in the original trial and was presently attached to the original transcript of the first trial that was filed with the Supreme Court of Alabama; that Exhibit 1 was a true and exact copy of the original in all respects and that she personally made the copy.

Chief Deputy Worthington was recalled and testified that Exhibit 1 was a photostatic copy of the fingerprints he made of the defendant, that he turned the original card over to Sergeant Pitts and that the defendant's fingerprints that he made were on the card.

Sergeant Pitts, an investigator for the Department of Public Safety, identified Exhibit 1 as the fingerprint card he received from Chief Deputy Worthington as being the fingerprints of the defendant.

J. B. Jolly, a fingerprint expert with the Department of Public Safety, testified that Exhibit 1 was given to him by Sergeant Pitts, that he compared the fingerprints of the defendant on the card with the fingerprints on the window sill and that they were the fingerprints of the same person. Then the following transpired:

"MR. BRYAN: The State offers in evidence State's Exhibit No. 1 for identification and asks that it be marked as State's Exhibit No. 1.

"THE COURT: Any objections?

"MR. HYDE: Yes, sir.

"THE COURT: Overrule it.

"MR. HYDE: This is not an original and is not the best evidence.

"THE COURT: I think that that has been accounted for by the testimony of the court reporter.

"MR. HYDE: It hasn't been accounted that it was lost or that they weren't able to obtain it.

"MR. BRYAN: The witness testified, Your Honor, that this was a true and exact copy of the original.

"THE COURT: I believe, Mr. Hyde, my recollection is that the court reporter testified that the original of this exhibit went in with the transcript.

"MR. HYDE: Yes, sir.

"THE COURT: That's sufficient for the Court. Overrule it. (Said document is hereby received into evidence as State's Exhibit No. 1 and the same is attached to the original of this transcript.)"

■ The trial court did not err in admitting the photostatic copy of the fingerprint card in evidence. The Court of Criminal Appeals in *Neal v. State,* 47 Ala. App. 68, 250 So.2d 605, cert. den. 287 Ala. 738, 250 So.2d 608, approved the admission in evidence of a "photo-copy of the micro film of the original invoice" over several grounds of objection, one of which was that it was "not the highest and best evidence."

■ Judicial records are admissible in evidence in the same and subsequent litigation, if relevant to the issues involved and shed light upon the issues being tried. *Benton v. State,* 245 Ala. 625, 18 So.2d 428; *Alston v. State,* 248 Ala. 163, 26 So. 2d 877. In the last cited case, "a copy of a copy" of a transcript of a record required to be kept was held to be admissible in a death case.

**344**

Here, the proper predicate was laid that Exhibit 1 was an exact copy of the original, made by the official court reporter from the original, and the unavailability of the original was explained because it was attached to the transcript on the first appeal which was filed in the appellate court. This fact is substantiated in the opinion of the Court of Criminal Appeals.

 The card was also admissible under the common law. The original card was a part of a public record since it was attached to the official transcript of the first trial. We quote the following from McElroy, *Law of Evidence in Alabama*, 2nd Ed., Vol. 2, § 218.02, p. 150:

"Proof of the content of the public record may be made by a copy thereof —at common law, by a sworn or examined copy; and usually, under a statute, by a certified copy. *Miller v. Boykin*, 70 Ala. 469, 478.

"The term 'examined or sworn copy' of a public record means a copy which a witness testifies was correctly copied by him from, or was compared by him with, the original and found to be a correct copy of the original. 20 Am.Jur., Evidence, sec. 1038."

Based upon the undisputed testimony, it is apparent that Exhibit 1 was admissible under the common law and case law of this state.

 We also note that "The proof required of the genuineness of papers taken from the records of a court need not be of such high degree as in other cases." *Butler v. State*, 38 Ala.App. 527, 93 So.2d 441, cert. den. 265 Ala. 694, 93 So.2d 445.

The judgment of the Court of Criminal Appeals is reversed and the cause is remanded.

Reversed and remanded.

HEFLIN, C. J., and HARWOOD, BLOODWORTH, MADDOX, McCALL and FAULKNER, JJ., concur.