329 So.2d 631

**Ronald WEBSTER, alias**

v.

**STATE.**

**3 Div. 486.**

Court of Criminal Appeals of Alabama.

March 30, 1976.

Carlton & Carlton, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Jane LeCroy Robbins, Asst. Atty. Gen., for the State, appellee.

HARRIS, Judge.

Appellant was put to trial upon an indictment which, omitting the formal parts, reads as follows:

"The Grand Jury of said County charge that, before the finding of this indictment W. RONNIE WEBSTER, alias RONALD WADE WEBSTER, alias RONNIE W. WEBSTER, whose name is to the Grand Jury otherwise unknown, did buy, receive, conceal, or aid in concealing eight Remington tires, a better description of which is unknown to the Grand Jury, of the value of $140.50 each, all of the aggregate value of $1,124.00, the personal property of Charles G. Lawson, knowing that they were stolen, and not having the intent to restore them to the owner, against the peace and dignity of the State of Alabama."

Appellant signed a waiver of arraignment and pleaded not guilty and not guilty by reason of insanity. The jury returned a verdict finding the defendant guilty as charged after deliberating twenty-five minutes. He was sentenced to thirteen months in the penitentiary. He was furnished a free transcript and trial counsel was appointed to represent him on appeal.

Appellant made a motion to exclude the State's evidence on the ground the State failed to carry the burden of proof in this case. This motion was overruled.

Officer B. W. Smith of the Montgomery Police Department testified that in the early morning hours of July 22, 1975, he stopped a light blue 1957 Chevrolet pickup truck on Madison Avenue near the intersection of Hull Street in the city and county of Montgomery, Alabama. In the back of the truck were eight new tires and the truck was being driven by appellant and he had a companion by the name of Earl Shephard. The officer asked the two men where they had gotten the tires and was told they had gotten them off a truck at Gowan's Truck Stop for Mr. Charles Oates who runs Charlie's Restaurant.

The officer asked the men if they had any type bill of sale or anything to show they had purchased these tires and they could not produce a bill of sale or other written instrument showing ownership of these tires. Officer Smith called the detective unit on duty at that time to come to the point where he had the truck stopped. He stayed with the truck and the occupants until the detective unit arrived and the truck, tires and the two men were carried to Headquarters to the Detective Division. The tires were impounded awaiting proof of ownership. The tires were described as Remington 10 by 22 truck tires.

On cross-examination Officer Smith stated that the truck was stopped at approximately 2:00 a.m. and that appellant told him the two men had gotten the tires from Gowan's Truck Stop. He further

stated that appellant told him that a black male had loaded the tires on the truck and that Charlie Oates had given him ten dollars to haul the tires from Gowan's Truck Stop to Charlie's Restaurant.

On July 21, 1975, Mr. Charles G. Lawson bought eight Remington 10.00 X 22 truck tires from Harris Tire and Rubber Co., Inc., in Troy, Alabama, for the total sum of $1,124.26, including tubes for the tires. Mr. Lawson drove his truck loaded with the tubes from Troy to Hope Hull, Alabama arriving at the Days Inn Motel around 6:00 p.m. He went to bed about 10:00 p.m. and got up the next morning around 6:00 a.m. He noticed the tires and tubes were not in his pickup truck and he reported the theft to the Montgomery Police Department. He further stated he did not give anyone permission to take the tires and tubes. At this point Mr. Lawson was shown State's Exhibit 4 and identified it as a photocopy of the invoice given him at the time he purchased the tires and tubes. This photocopy was admitted into evidence over the objections of appellant that the best evidence would be the original.

Detective G. T. Alford of the Montgomery Police Department testified that he got a call to go to the Eight Days Inn in Hope Hull and talk to Mr. Lawson about coming to Headquarters to see if he could identify some tires and tubes that the police officers had recovered during the night. Mr. Lawson identified the eight tires and tubes he had purchased the day before from Harris Tire Company in Troy. The tires and tubes were surrendered to Mr. Lawson and he signed a warrant for appellant and Shephard. A property inventory sheet showing these tires and tubes made out by the Police Department was introduced in evidence without objections.

Detective Herbert C. Norton testified that he joined Officers Smith and Grayhouse where they had a 1957 Chevrolet pickup truck stopped. He stated that appellant told him he had been to Gowan's Truck Stop and Charlie had given him $5.00 to transport some tires to Charlie's Restaurant. It subsequently developed that "Charlie" turned out to be Charlie Oates who was employed by Charlie's Restaurant. He further testified that the officers took custody of the tires and tubes pending their efforts to locate Mr. Oates.

Mr. Norton further testified that the next evening when he came on duty he learned that warrants had been issued for both appellant and Shephard and that about 3:00 a.m. he went to appellant's home to serve the warrants. Appellant's wife answered the door and told Mr. Norton he was not home. Upon being advised that he had arrest warrants for the two men, they appeared and were carried to Police Headquarters where they were given the *Miranda* rights and warnings.

Mr. Charles Oates was called as a witness for the State and testified that he was at Gowan's Truck Stop on the early morning hours of July 22, 1975, and he had a conversation with a man by the name of Shephard who tried to sell him some tires for $40.00 but he did not buy them. He stated Shephard showed him the tires and they were big truck tires. He said he did not see appellant at this time.

Mr. Eddie Booker testified that he was night manager at Gowan's Truck Stop and that his hours of employment were from 11:00 p.m. until 7:00 a.m. He stated that he was working his regular shift on the night and morning of July 22, 1975. He further testified that he saw appellant in the early morning hours of July 22 and appellant tried to sell him some tires and tubes, and the other man said I can get the tires in fifteen or twenty minutes. Later Mr. Booker saw the tires in the back of a blue pickup truck, but he did not buy the tires or attempt to buy them. Mr. Booker further testified that about a week before appellant's trial, he and Mr. Shephard came out to the truck stop and appellant wanted him not to say anything about him

trying to sell the tires and tubes as Shephard was going to "take the rap."

Mr. Shephard tried to "take the rap" for appellant. Appellant did not testify. Mr. Shephard testified he lived in LaGrange, Georgia, and had known appellant for fifteen years. He stated that he was in Montgomery the night of July 22, 1975, and that he and appellant went to Chester's about 8:00 p.m. That after being at Chester's a few minutes he asked appellant if he could use the pickup truck to go to Hope Hull to see about his wife. He stated he went to Hope Hull and left appellant at Chester's. He was informed he might find his wife at the Eight Days Inn and that he drove around the motel and saw a truck with some tires on it. He got out and took the tires off the pickup and put them in the 1957 blue Chevrolet and went back to Gowan's Truck Stop alone. That he stayed at Gowan's Truck Stop trying to sell the tires and that he talked to several different truck drivers. He said he talked to a man named Charlie who told him to take the tires to the Farmers Market. That he then went to Chester's to get appellant and appellant asked him where he got the tires and he told him that a friend of his in Hope Hull had the tires and gave him $5.00 to carry them to the Farmers Market. He stated that appellant drove and when they got to Montgomery, the police stopped them and carried them to Police Headquarters.

Mr. Shephard said that he stole the tires himself. He stated that he picked the tires up from the truck and that appellant was not with him and didn't know the tires were stolen. He further stated that appellant did not try to sell the tires.

On cross-examination Mr. Shephard admitted that he pleaded guilty to the crimes of burglary and grand larceny in the years 1962, 1964 and 1972. He identified photographs, State's Exhibits 1 and 2, as being similar to the tires he claimed he loaded on the truck alone.

On rebuttal the State recalled Mr. Booker who stated that he was familiar with the type of tires shown in the photographs and they would weigh between 80 and 100 pounds each and that it would take a mighty strong man to pick one tire up by himself.

The jury simply rejected Shephard's testimony as it was contrary to the uncontradicted evidence adduced by the State showing appellant's involvement with these stolen tires.

There was no motion for a new trial; there was no request for the affirmative charge and no exceptions were reserved to the Court's oral charge to the jury.

Appellant's only claim of error to reverse this conviction was the action of the trial court in admitting into evidence the photocopy of the invoice given Mr. Lawson at the time he purchased the tires and tubes on the ground that it was not the highest and best evidence.

The contention was held adversely to appellant in *Neal v. State*, 47 Ala.App. 68, 250 So.2d 605.

The *Neal* case, supra, was cited with approval in *Yelton v. State*, 294 Ala. 340, 317 So.2d 331, wherein the Supreme Court said:

"The trial court did not err in admitting the photostatic copy of the fingerprint card in evidence. The Court of Criminal Appeals in *Neal v. State*, 47 Ala. App. 68, 250 So.2d 605, cert. den. 287 Ala. 738, 250 So.2d 608, approved the admission in evidence of a 'photo-copy of the micro film of the original invoice' over several grounds of objection, one of which was that it was 'not the highest and best evidence.'"

After a careful research of the record we have been unable to find an error inju-

riously affecting the substantial rights of appellant.

The judgment of conviction is affirmed.

AFFIRMED.

All the Judges concur.