331 So.2d 417

**Arthur BURR**

v.

**STATE.**

**8 Div. 467.**

Court of Criminal Appeals of Alabama.

April 20, 1976.

Robert T. Meadows, III, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Ellis D. Hanan, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of burglary in the night time and the jury fixed his punishment at ten years imprisonment in the penitentiary. With counsel present at arraignment appellant interposed a plea of not guilty. After sentence was imposed, he gave notice of appeal. He was furnished a free transcript and this Court appointed counsel to represent appellant on this appeal.

The testimony adduced by the State made out a clear case of burglary in the night time. Appellant made a confession which the trial court held to be voluntary and it was admitted in evidence. At trial appellant repudiated the confession and set up the defense of an alibi.

Mr. D. W. Hester, a man about 86 years of age, was living some three miles south of Russellville, Franklin County, Alabama, on December 23, 1972. Two of his sisters lived with him. He testified he and his sisters were in the home when the house was broken into around 5:30 p. m. That it was dark and the lights were on in his home. He heard the back door being broken and the next thing he knew he was grabbed from behind in his bedroom. He stated that he could not identify the man who grabbed him but he saw him well

enough to know that he was a black man. He further stated that this person hit him on the head twice with his own walking stick and knocked him across his bed causing him to bleed considerably. The man who assaulted him asked him twice, "Where is the money?" Mr. Hester had about $600.00 in a cigar box which he kept in his top dresser drawer and when the man left the house, he checked the cigar box and found the money missing. Mr. Hester was taken to the hospital by ambulance where the two lacerations on his head were sutured. He stayed in the hospital four days and the scars on his head were still visible at the time of appellant's trial.

Ms. Cecile Hester testified that she was living with her brother and sister on the night of the burglary and robbery. She said she heard loud noises at the back door about 5:30 p. m. and shortly thereafter there were three black men in the den she was occupying. She stated one of the men pushed her down on the floor and that he had a gun. She saw two other men run out of her brother's bedroom and then the three men left the house. After the three black men left, she inspected the house and discovered the rear storm door was broken open and the glass in the door was broken. She also found that one of the windows was broken out and it was not broken prior to the night of the burglary.

The Sheriff of Franklin County, Swanson Heardman, testified that he investigated the burglary and robbery and found the back door had been broken open and the glass in the door had been broken out. He stated there was blood on the bed and pillow in Mr. Hester's bedroom. He found three sets of human foot tracks outside the house and a black stocking was found in the back yard at a point just south of the house. He also found car tire tracks at a nearby creek and that a plaster cast was made of the car tracks. A tire from the car of George West was confiscated and these were kept in his custody until he sent these items to the laboratory of the Feder-

al Bureau of Investigation to have comparison tests made but the lab report stated that there were not sufficient identifying characteristics in the cast to conclude that it was made by the tire in question. The Sheriff also found that the kitchen telephone wire had been cut.

Mr. Dexter Haney, Criminal Investigator with the Alabama Department of Public Safety, testified that he interviewed appellant on December 30, 1972, at the county jail in Russellville in the presence of Jim Hickman, Deputy Sheriff at the time of the burglary. That before any questions were asked, Mr. Haney gave appellant the *Miranda* rights and warnings. Haney interviewed the appellant two or three times prior to December 30, 1972, and each time he gave him the *Miranda* rights. None of these interviews lasted longer than fifteen minutes. On December 30, appellant stated he wished to waive his rights and give a statement concerning the burglary and robbery. Mr. Haney wrote the statement as given to him by appellant and initialed each paragraph. Appellant made one correction in the written statement and initialed it, and then he signed the statement. The statement is as follows:

"Q Would you read that statement to the Jury, please sir?

"A Yes sir. The statement is dated December 30, 1972, at 1:00 P.M., Statement of Arthur Lee Burr and it gives his birth date as May 28, 1950. About a week ago I was with Hoyt McGee, George West, and Harry Abernathy. We was in George West's car, a Pontiac with wide tires. About dark, we went to a place South of Russellville. We saw a large house and pulled into a field passed the house, turned the car around and parked there for a while. We all had a drink of whiskey while we were parked. We were drinking from a bottle. Someone suggested that we go to the large house, we could see from where we were parked and rob the people. We went up to the house, George stopped the car and

let me, Hoyt McGee, and Harry Abernathy out at the car. Then he left and drove around. He said when we got out of the car that he would pick us in about five minutes. I went to the front of the house. Hoyt and Harry went to the back of the house. I could hear them breaking in the door. I heard glass breaking, then I went to the back of the house. They were already in the house, when I got to the back door. I went on in the house and saw two old ladies lying face down on the floor. I saw one of them was with the old ladies. I went to the room where the other one was. I looked in the room and saw an old man lying on the bed. I don't remember if it were Hoyt or Harry in the room with the old man. Hoyt had put a dark colored stocking before he went in the house. I started to go back out of the house and heard the old man hollering. I could not understand what he was saying. When I got out of the house, Hoyt and Harry came out right behind me.

We ran to the blacktop road in the front of the house and ran down the road to the creek. We hid in some bushes until George came along and picked us up. After we got in the car, we divided the money. I got about $100.00. We then all went to Sheffield. We got some wine in Sheffield and rode around for a while and went to the GOT Club. We all smoke some reefers while we were riding around after the robbery. We got separated in Sheffield. I don't how I got home. Signed, Arthur Burr."

There was a voir dire hearing out of the presence and hearing of the jury. The trial judge determined that the above statement of appellant was freely and voluntarily made and the same was admitted in evidence.

According to appellant's statement he and George West, Hoyt McGee and Harry Abernathy were in West's car. West parked his car near a house south of Russellville and appellant, Abernathy and McGee got out of the car with intent to rob the house. Abernathy and McGee went to the back of the house and appellant went to the front of the house. Appellant heard the other two men break the back door and heard glass breaking. He stated that McGee put on a dark stocking before he went in the house. Appellant admitted that he entered the house. Appellant did not know whether McGee or Abernathy were in the bedroom with Mr. Hester but he heard the old man hollering. He admitted there were two old women in the house. When the three left the house, they ran down to a creek nearby and West appeared shortly thereafter and picked them up in his car. The robbers then split the money that was taken in the robbery and appellant said he got $100.00.

James Hickman, who at the time of the trial was Assistant Chief of Police at Red Bay, Alabama, testified that he talked with appellant on December 30, 1972, and the defendant carried him to the place where he was staying and gave him the money remaining of that he received from the robbery. Appellant told Mr. Hickman that he received $100.00 as his part from the robbery.

Appellant testified that he signed the statement admitted in evidence by the State but claimed he did so because the police were harassing him. He stated that on the night of the robbery he went to the hospital to see his sister, Malinda Cummings, and after leaving the hospital he went to Sheffield with Thomas Hamm. He said he got to the hospital "somewhere like 5:00 or 6:00 or 6:30 p. m."

On cross-examination appellant testified that he finished high school and attended a junior college for a while. That he could read and write. That he signed the statement implicating himself and the others in the burglary but the police would not let him read the statement after he signed it.

His alibi was supported by his father and sister but they were mixed up and con-

fused as to the time they claimed to have seen appellant at the hospital.

On rebuttal the State called Roger Hamm as a witness. He testified that shortly after the burglary and robbery occurred on December 23, 1972, appellant came to him and told him that if the police questioned him to tell the officers that appellant, George West, Champ Hillman and Richard Randolph were with him at the time of the burglary and robbery. Hamm further testified that he was in the Franklin County Jail when he talked to Mr. Dexter Haney, the criminal investigator for the State of Alabama but no one suggested to him what to say when he took the witness stand and he was not told that he would get a lighter sentence if he testified at appellant's trial.

There was no motion to suppress appellant's confession; there was no motion to exclude the State's evidence; there was no request for the affirmative charge; there was no motion for a new trial; there were no exceptions reserved to the Court's oral charge to the jury, and there were no adverse rulings on the admission of evidence during the trial that contain any merit. In this posture of the record there is simply nothing to review by this Court. *Eady v. State,* 48 Ala.App. 726, 267 So.2d 516; *Price v. State,* 53 Ala.App. 465, 301 So.2d 230; *Goodman v. State,* 52 Ala.App. 265, 291 So.2d 358; *Hall v. State,* 57 Ala. App. 132, 326 So.2d 660.

The weight of the evidence, the credibility of witnesses and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury. *Willcutt v. State,* 284 Ala. 547, 226 So.2d 328; *Braswell v. State,* 51 Ala.App. 179, 283 So.2d 630.

Alibi evidence, like all evidence in a criminal prosecution, is a matter for the jury to resolve. *Price v. State,* supra.

In face of testimony of witness that the defendant confessed to the crime and that no threats or inducements were made to the accused to obtain it, and in absence of evidence of threats, promises of reward or other inducements, appellant's confession was admissible as voluntary. *Rogers v. State,* 275 Ala. 588, 157 So.2d 13; *Smith v. State,* 253 Ala. 220, 43 So.2d 821.

We find no reversible error in the record and the judgment of conviction is affirmed.

AFFIRMED.

TYSON, DeCARLO and BOOKOUT, JJ., concur.