The defendant was indicted and convicted for rape and sentenced to twenty years' imprisonment. The only question presented on appeal is whether the trial court erred in admitting into evidence a statement handwritten by the defendant while he was confined in jail and before he was given his warnings required by Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The sufficiency of the evidence is not contested. There was no motion to exclude the State's evidence, no request for any written charge and no mention for a new trial. Thompson v.State, 347 So.2d 1371, 1373 (Ala.Cr.App.), cert. denied,347 So.2d 1377 (Ala. 1977). The prosecutrix testified that she was abducted outside a lounge in Birmingham and taken to Marshall County where she was repeatedly raped and assaulted by the defendant and two other men. The defendant, his brother, Ernest Romine, and his cousin, Allen Abbott, each testified that the prosecutrix voluntarily went with them and consented to various sexual acts.
While the prosecutrix was at the Marshall County Sheriff's Department she asked that a handwritten note be delivered to her attackers who were upstairs in the *Page 1186 
county jail. The note stated, "If you know where my car is, tell me if you want out of this." The subject of this note was interjected into trial by defense counsel on his cross examination of the prosecutrix and the note itself was introduced as a defense exhibit.
Sometime after 5:00 P.M. on the day of the rape, the prosecutrix handed Deputy Sheriff Lacy Galloway the note. When he read the note he asked her "if she got her car was she going to forget about it, and she said, `No, I cannot find my car, and I want this note carried up to tell me where my car is.'" When Deputy Galloway had this conversation with the prosecutrix, the Sheriff was present. The Sheriff had called the Deputy out to the "booking counter near the elevator" and asked him to "carry the note up".
Deputy Galloway then:
 ". . . carried a note from (the prosecutrix) and called all three of them to the bars and told them that she had sent a note up there, and all of them was standing there, and Ernest took the note. He started writing on it, and Ronald (the defendant) asked someone for a piece of paper, and he started writing, and they gave me the notes back."
All three men read the note and Ernest was "the one that took it" from Deputy Galloway. On the bottom portion of the note Ernest wrote, "We never saw your car. You got in with us at Al's Cabaret in Birmingham. Please let us out of here." On a separate piece of paper the defendant wrote, "Please drop charges. We are sorry. Please I got a baby and a wife Please." After Galloway read the notes he gave them to the prosecutrix but later got them from her and placed them in his file.
The Deputy had no conversation with the defendant when he carried the prosecutrix's note upstairs to the jail. The defendant told Galloway to "carry the note down and give it to her", or words to that effect.
Defense counsel never objected to the note on the specific grounds that it was involuntary or given without a properMiranda warning. In fact, the trial judge, on his own motion, initially directed an inquiry into the voluntariness issue: "I need some testimony on self-incrimination if you will."
The State then adduced the following testimony:
 "Q. Officer Galloway, at the time that you went upstairs to deliver the note, did you have any conversation other than what you have already testified to with any of the three individuals?
 "A. I do not recall any conversation, no more than telling them that lady sent a note up there.
 "Q. Did you or anyone in your presence ask them to or direct them to sign a response or to indicate any sort of response on this note?
"A. No, I did not.
 "Q. Did you or anyone in your presence tell them that they should send a response back down on this note?
"A. No.
 "Q. Did you or anyone in your presence threaten them in any way in order to tell them if they did not sign it something was going to happen to them?
"A. No, sir.
 "Q. Did you or anyone in your presence tell them that things would go easier for them if they would respond to that note?
"A. No, sir.
 "Q. Lacy, as a matter of fact other than what you have testified to, was there any questioning that was done by you?
"A. No, sir.
"Q. Did you ask them any question?
"A. No."
In overruling an objection by the State to the line of questioning being pursued by defense counsel, the trial judge noted that there had been no evidence of custodial interrogation. However, the court allowed defense counsel to show that the defendants had not been given the Miranda
warnings in Deputy Galloway's presence. The defendant did not testify on the issue of the voluntariness of his written statement.
Testimony in the record shows that the defendants were stopped and arrested *Page 1187 
around 12:00 noon on June 8, 1979, by an officer of the New Hope Police Department. They were turned over to a unit of the Marshall County Sheriff's Office. Shortly after the defendants were arrested, Investigator A.G. Lang advised Allen Abbott of his Miranda rights. The record does not reflect when or if the defendant was warned of his constitutional rights.
After this predicate the defendant's handwritten note was admitted into evidence. Then the note written by the prosecutrix and the reply written by Ernest on the bottom of that note were received into evidence on the offer of defense counsel.
Without objection from defense counsel, the State cross examined the defendant about the note he wrote in the jail.
 "Q. What were you sorry about, that you were so sorry when you wrote this?
"A. I was sorry things happened the way they did.
 "Q. The way things happened. You had not done anything to be sorry about, had you?
"A. No, sir.
"Q. You had not laid a hand on her?
"A. No, sir, I had not.
"Q. She was perfectly willing?
"A. Yes, sir.
"Q. But you were sorry about it?
"A. Yes, sir."
The defendant maintains that his handwritten note was involuntary because it was the product of custodial interrogation before he was given his Miranda warnings. The State argues that the written statement was volunteered and that the defendant was never subjected to any questioning or interrogation and therefore Miranda was not necessary. UnderMiranda, the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless it demonstrates the use of the "procedural safeguards" effective to secure the privilege against self-incrimination.
Initially we preface our remarks with recognition of the fact that "(w)hen the circumstances indicate that, according to the common probabilities of experience, the confession was not improperly induced, then no formal predicate is required". C. Gamble, McElroy's Alabama Evidence, § 200.02 (4)(a) (3rd ed. 1977).
There is no dispute that the defendant was in actual custody when he wrote the note. The basic issue is whether the Deputy's actions constituted "interrogation" within the contemplation ofMiranda. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444,86 S.Ct. at 1612. We think it unquestionable that "certain police conduct, though not verbal, may nevertheless be tantamount to interrogation for purposes of requiring Miranda warnings". See the excellent treatment of this subject in Vines v. State,402 A.2d 900 (Md. 1979).
 "Any police conduct, verbal or otherwise calculated to, expected to, or likely to stimulate incriminating statements from one in custody would seem to fall within the term `custodial interrogation'." Rothblatt and Pitler, Police Interrogation: Warnings and Waivers — Where Do We Go From Here? 42 Notre Dame Law, 479, 486, n. 42 (1967) source cited in Vines, 402 A.2d at 903.
"Interrogation" has been defined as "police questioning or conduct which is calculated to, expected to, or likely to evoke admissions". Com. v. Whitman, 252 Pa. Super. 66, 380 A.2d 1284
(1977).
Yet, even if we consider that the defendant's admission was obtained in violation of Miranda in that the conduct of the Deputy amounted to "interrogation", we do not think that its admission into evidence requires a reversal of his conviction in view of his testimony and that of his two alleged accomplices at trial. All three men admitted being with the prosecutrix at the time she alleged that she was raped. The defendant and Ernest admitted performing sexual acts with the prosecutrix. The entire and sole defense was that the prosecutrix freely consented to sexual conduct with the defendant and his brother. *Page 1188 
Allen Abbott stated that the prosecutrix, Ernest and the defendant were in the back seat of the automobile he was driving; that he saw the prosecutrix have "oral sex" with Ernest but that he never saw any act of intercourse.
Ernest Romine, the defendant's brother, testified to trying unsuccessfully to have intercourse with the prosecutrix on four separate occasions and having her perform fellatio on him. Ernest stated that the defendant "wanted me to scoot over and let her have oral sex with him * * * I scooted over, and she did that to him." According to Ernest, Abbott said that he was going to have sexual intercourse with the prosecutrix but that he did not know if Abbott did or not. Ernest stated that no one had intercourse with the prosecutrix and that the defendant never attempted to have intercourse with her.
The defendant admitted being with Ernest and the prosecutrix in the back seat of the automobile. He stated that Ernest tried but could not "make love" to the prosecutrix so she performed fellatio on Ernest. The defendant testified that after this Ernest "still could not do anything, so he moved over, and then I asked her would she do the same thing to me" and the prosecutrix performed fellatio on him. The defendant denied ever having sexual intercourse with the prosecutrix.
A defendant cannot complain of the admission of improper evidence where he himself testifies to the same facts. Yeltonv. State, 294 Ala. 340, 342, 317 So.2d 331 (1974). Even though there may have been error in admitting an admission or confession, such error is cured or rendered harmless by the defendant's own testimony which is substantially in the language of the confession or admission. Smith v. State,253 Ala. 220, 43 So.2d 821 (1950); Ray v. State, 248 Ala. 425,27 So.2d 872 (1946); Burlison v. State, 369 So.2d 844, 850
(Ala.Cr.App.), cert. denied, 369 So.2d 854 (Ala. 1979);Thompson v. State, 53 Ala. App. 484, 301 So.2d 248 (1974);Etheridge v. State, 47 Ala. App. 233, 252 So.2d 655 (1971);Smith v. State, 40 Ala. App. 393, 114 So.2d 295 (1959).
The substance of the note was the implication of the defendant's presence at the scene of the alleged crime and his complicity with the other two men. However, the defendant, and the other defendants, admitted this on the witness stand rendering harmless the substance and implications of the note itself. We have reached this conclusion after careful consideration of the particular facts in this case mindful that the harmless error rule is not a panacea for any and all violations of a defendant's right to a fair trial.
We have responded to the arguments advanced by the defendant and have searched the record for error as required by law. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.