Appellant was indicted by the Grand Jury of Jackson County for the murder of John David Robinson. After entering a plea of not guilty, appellant was tried before a jury and found guilty. The trial court sentenced the appellant to fifty years' imprisonment in the State penitentiary. Appellant subsequently filed a motion for new trial. The motion was denied and this appeal followed.
Aneva Robinson, the deceased's mother, testified she lived in "the hill" area of Scottsboro. She stated she observed her son, John David Robinson, at the funeral home and that he was deceased.
Keith Smith, a Captain with the Scottsboro Police Department, testified concerning a diagram he made of the area surrounding the scene of the murder. Captain Smith stated the murder occurred in an area of project house duplexes, where the appellant's wife resided. The diagram indicated the location of the victim's body, duplex houses, and vehicles on the street at the scene.
Witness Chester Lee Cox testified the deceased and appellant lived in neighboring houses on Joe Boulevard in Scottsboro, a short distance from the project. Cox stated he was at his home on the evening of May 12, 1980, at 1113 Houston Street, across the street some fifty feet from the residence of the appellant's wife. He was standing in his front yard at approximately 5:30 p.m. when he observed Buddy Craft, appellant's brother, drive up to the Craft residence. Buddy and the appellant talked for a while. They each obtained a "long gun," and then *Page 1136 
crouched between the Craft brothers' two automobiles which were parked end to end on the street. They used the vehicles as shields for protection as they rested their guns on the hoods. Cox stated he saw both men fire several times that day. He heard no other shots before the Craft brothers began firing. After the shooting, Cox stated he went around to see what the Crafts were shooting at and saw the deceased lying on the ground. Cox stated he saw no weapons around the area of the deceased.
James Albert Dillard was on the porch of a neighboring residence the afternoon of the murder and observed the deceased driving his pickup truck with his two-year old child as a passenger. As the deceased drove down the road toward the project, the witness heard gunshots and observed gunshots hit the deceased's moving vehicle. The deceased then stopped the truck and opened the door. Shots began to enter the truck and the deceased pushed the child down to the floorboard, jumped from the truck and ran. The shooting continued as he fell, got up, and ran and fell again as he tried to escape. The witness first observed the appellant and his brother as they came up to the deceased and shot him again as he lay on the ground. The appellant and his brother then fled across the street. The witness testified he saw the appellant shoot the shotgun the afternoon of the murder and that five or six shots were fired. He testified further that he saw no weapon in the hands of the deceased.
Martha Fay Grayson testified she lived directly across the street from the appellant's wife. She was sitting on her front porch the afternoon of the shooting and observed the appellant walking up the street with a gun on his shoulder. She saw the appellant's brother drive up in his car and park in front of the appellant's car. The appellant turned around and walked toward his brother, who was also carrying a gun. Mrs. Grayson heard the appellant shout to his wife, "Get my kids inside; I'm going to do some shooting." As Mrs. Grayson was in the process of calling the police, she heard gunshots. She observed the appellant's brother stooped down between two automobiles aiming a rifle. After the shots, she heard screaming. She ran to the door and saw the deceased lying on the ground. Immediately after the shooting, she saw appellant's brother leave in his automobile.
Keith Smith, Captain of the Scottsboro Police Department, testified as to the position of the Craft brothers' vehicles. He also observed dents from 00 buckshot in the deceased's vehicle and the area surrounding the scene of the crime. Captain Smith identified photographs he had taken of the deceased at the Jackson County Hospital emergency room, which were admitted into evidence over the appellant's objection.
Captain Smith testified out of the presence of the jury that he had advised the appellant of his constitutional rights, both orally and in writing, at the police station after the appellant was taken into custody. The appellant gave an oral statement, which Captain Smith took down in longhand. After the statement was typed the following day, the appellant read and signed it.
Appellant testified on voir dire that Captain Smith did not read his rights to him the night he made the oral statement. He did recall Smith reading him his rights when Smith returned the following day. The trial judge, however, found the statements made by the appellant to have been voluntarily made and proper for the jury to consider. The appellant's statement appears in the record as follows:
 "He stated he was laying on the couch at 1106 North Houston Street when his three kids ran in and said John David is killing your dog. He stated he told the kids to go on back up there and get the dog off of him before they kill him. This happened about 5:30 p.m. He stated he stayed there and his wife told him, `Don't go up there honey, you know how it will be.' He stated he then went out in the yard because he was afraid John David might shoot one of the kids. He stated he went out close to the car so to be near his gun. John David drove down the road in a blue truck. He looked over at *Page 1137 
Craft, stopped the truck and started running toward Craft. He had a gun or something in his hand. He stated he emptied his shotgun at John David. He stated he didn't take his sights off him until the gun was empty. He stated his brother, Buddy Craft, said, `You've done killed him, you shouldn't have done it.' Buddy took the gun."
Captain Smith testified appellant identified a .12 gauge shotgun as one which belonged to him and as the same gun with which he shot the deceased. Wadding and shells found by Captain Smith at the scene indicated that both a .12 and a .16 gauge shotgun had been fired.
Joseph Embry, a forensic pathologist for the State, testified he examined the deceased on May 14 and that the deceased had eleven shotgun wounds from the top of his head to the sole of his foot. He stated the cause of death was multiple gunshot wounds.
Keith Smith, on being recalled, testified a shotgun belonging to the deceased's grandfather was found between the deceased's body and his vehicle by Officer Truman Dawson. Also a .38 caliber pistol was found on the truck seat of the deceased's vehicle. Neither gun had been fired.
Officers John Childress and Truman Dawson testified concerning their on-the-scene investigation and corroborated the testimony of Captain Smith, after which the State rested its case. The appellant moved for a directed verdict on the grounds the State failed to prove a prima facie case of an intentional killing. The defense also moved to exclude the State's evidence. The trial court denied both motions.
Charlie Noble, the appellant's sixteen year old stepson, testified he was at his mother's house on the afternoon the shooting occurred. His father was there, also, lying on the couch. A neighbor called and said the Crafts' dogs were fighting with the deceased's dogs up at his stepfather's house. Charlie and his two brothers went to break up the fight. He observed the deceased standing in his stepfather's yard holding a gun. As Charlie was tying up the dogs, after the fight was broken up, he heard gunshots and fell to the ground. He returned to his mother's house after the shooting stopped, where he saw his stepfather, William Craft, and uncle, Buddy Craft.
Wilson Junior Cothron, thirteen year old stepson of the appellant, corroborated Charlie Nobles's testimony. He stated he did see his stepfather with a gun on that occasion, but did not see the shooting.
Ann Craft, the appellant's wife, testified she saw her husband bending down by his automobile in front of her house the evening of the shooting. He had a gun and she saw him fire it. As the shooting started she saw Buddy Craft run and get her daughter to bring her into the house. Mrs. Craft also testified she saw the deceased's truck come down the hill toward her house. The deceased jumped out of his truck and ran towards the project holding a shotgun. She stated he appeared to aim the gun to fire as he ran, while her husband, the appellant, shot at him.
Mrs. Craft testified that the Saturday before the shooting occurred she was with her husband in his truck parked at the culvert located between the appellant's and the deceased's houses. She stated the deceased ran into his house, and the appellant told her to jump out of the car. A shot came from inside the Robinson house and her husband was struck. Her husband was also armed with a rifle. She took her husband to the emergency room, where he was treated and released.
Mrs. Craft further testified that the appellant's brother, Buddy Craft, did not arrive at the scene until after the shooting began. He fired no shots, nor did he have a gun.
Buddy Craft, the appellant's twenty-one year old brother, testified the first thing he saw when he arrived at the scene was the deceased jumping out of his truck with a gun. The witness stated he grabbed his brother's little girl and ran towards the house. He heard some shots as he ran with the girl, but could not see the actual shooting. *Page 1138 
Craft stated he did not have a gun, nor did he fire a shot that day.
William Craft, the appellant, took the stand to testify in his own defense. He stated he received shotgun wounds in his arms, forehead, and chest in an altercation with the deceased the Saturday before the shooting on Monday. The altercation arose over the relocation of a culvert tile between the homes of the appellant and the deceased. He stated the deceased fired twice at him from inside his house, after which the appellant then got his rifle and fired three times toward the deceased.
The appellant testified that, on Monday morning of the day the fatal shooting occurred, the deceased drove by in an automobile and shouted at him, "That's all you can do is set on that porch bandaged up." The defendant stated he turned and walked back into the house upon hearing that statement.
The appellant recalled a dog fight occurring the Monday afternoon of the fatal shooting. He stated he went out into his wife's yard where he saw the deceased standing in his yard and the dogs fighting. He saw a long gun in the hands of the deceased. The deceased arrived at the house of the appellant's wife shortly thereafter and got out of his truck with a gun. He approached the appellant, got into a crouched position, and fired the gun. The appellant then reached into his car, got his automatic shotgun, and fired it until it was empty. Appellant also stated his brother, Buddy Craft, did not have a gun and did no shooting that day.
After recalling Captain Smith for the purposes of introducing into evidence the pistol found in the deceased's truck, the defense rested.
Hugh Denny Carter, called by the State on rebuttal, testified that he was present at the Saturday morning altercation between appellant and the deceased. He stated that the appellant arrived on the scene in his automobile, with his wife, and exited the vehicle with rifle in hand. The deceased asked appellant to put down the gun and settle the matter. Appellant responded with a profane refusal to put down the rifle and began firing. The deceased was unarmed at the time the witness observed the scene. The witness fled immediately as the shooting began and saw nothing further.
Police Officer Clarence Bolte was called and after testifying to having informed appellant of his rights, stated the appellant told him at the police station that the deceased never fired a gun at him the day of the fatal shooting. After Officer Bolte's testimony, the State rested. The defendant's motions for a mistrial, directed verdict, and to exclude the State's evidence were overruled by the trial court, and closing arguments were made without objection.
The appellant argues the trial court abused its discretion in admitting into evidence certain photographic exhibits of the deceased's body which appellant contends were highly inflammatory and prejudicial.
Photographic exhibits which tend to prove or disprove a disputed or material issue, illustrate or elucidate relevant evidence or to corroborate or disprove other evidence, are properly admissible, even where such exhibits were merely cumulative and demonstrative of undisputed facts. Lewis v.State, Ala.Cr.App., 339 So.2d 1035, cert. denied, Ala.,339 So.2d 1038; Hines v. State, Ala.Cr.App., 365 So.2d 320, Ala.,365 So.2d 322.
We have carefully reviewed the photographs and find they were properly received into evidence by the trial judge. While the pictures depicted wounds over a large area of the body, they were not particularly ghastly or offensive. The photographs substantiated and illustrated testimony given by State witnesses and were of sufficient probative value to merit their admission into evidence.
Appellant contends the trial judge erred in his oral charge to the jury as it pertained to self defense by omitting to charge as to the exculpatory effect of the withdrawal from conflict by an original aggressor. The withdrawal to which appellant *Page 1139 
alludes appears to be his reaction to an alleged statement made by the deceased the morning before the murder occurred. Appellant testified the deceased shouted at him from his automobile, "That's all you can do is set on that porch bandaged up," after which appellant went into his house.
We have reviewed the entire record and found no factual basis which would have required the trial judge to expand his oral charge in the manner insisted upon by the appellant. The charge was not requested in writing by the appellant, but was merely raised by way of exception to the court's oral charge. We find no evidence of a withdrawal from conflict by the appellant, but, on the contrary, find the appellant both initiated and fatally resolved the attack, without withdrawal and apparently without any hesitation or remorse on his part. To require the expansion of the court's oral charge in this manner would require the giving of an abstract charge which was in no way predicated upon the relevant and material facts of the case.Boggs v. State, 270 Ala. 209, 116 So.2d 903. Additionally, the remedy for supplying a pertinent principle of law omitted from the trial court's oral charge is to submit a written charge which supplies the omitted principle. Snider v. State [6 Div. 461, Ms. May 26, 1981, Ala.Cr.App. 1981.] The record reveals no written charge requested by the defendant.
No prejudicial error to the substantial rights of appellant having been found in our review of the record, the judgment of conviction is due to be affirmed.
AFFIRMED.
All the Judges concur.