[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 784 
Appellant was convicted in Etowah Circuit Court of murder and first degree robbery. Appellant was sentenced to life imprisonment on both counts.
The State's first witness was Gerald White, a resident of Rainbow City in Etowah County. While returning home from Birmingham on the night of March 6, 1981, Mr. White saw a body lying in a street near his home. He immediately called the police and the paramedics.
Jeffery Graham, a paramedic for the Rainbow City Fire Department, arrived on the scene around 11:00 p.m. He checked for vital signs and found none. There was a lot of blood on the left side of the victim's head. He noticed that the victim's pockets had been pulled inside out. Mr. Graham identified a number of photographs taken of the scene at that time.
Aubrey Newman, a sergeant for the Rainbow City Police Department, took custody of the scene. He also noticed that the victim's pockets were turned inside out; the left pocket was pulled further out than the right. There was loose change near the body as well as a pocketknife. The victim's head was surrounded by a puddle of blood.
William O. Bragg, the Coroner of Etowah County, also saw the body in the street. He determined the cause of death to be a gunshot wound in the head. The bullet had apparently entered behind the right ear and exited from the top lobe of the head. Coroner Bragg was present at the victim's autopsy and testified that the body was in the same condition as when it was found. In his opinion, death was instantaneous.
Lieutenant Larry Waldrop of the Cullman Police Department was called to the stand. He and some fellow officers found a black van in Cullman County that had been partially burned. There was a bullet hole in the windshield on the passenger's side, and various objects found in the van were apparently bloodstained.
Deputy Sheriff Paul Pruett of the Cullman County Sheriff's Department ran a registration check on the partially burned van and determined who owned it. He then got in contact with the owner's family.
Alan Farmer, a resident of New Orleans, came to Etowah County to identify the body. Mr. Farmer identified the body as Charles Moore, his son-in-law. According to Mr. Farmer, the victim, after having had an argument with the victim's wife, had left New Orleans to visit his family in Ohio.
Laura Hamby, a twenty-year old resident of Rainbow City, saw appellant the morning of March 7, 1981. She was picked up by a friend, Michele Cassidy, and appellant was in the back seat with Michele's mother, Sheri Yarborough. Mrs. Yarborough and appellant were dating each other.
While in the car, Mrs. Hamby heard appellant say that he was hitchhiking from New Orleans and had been picked up by the victim. The victim had pulled a gun on appellant, demanding that he drink a beer. Somehow appellant ended up driving and had the gun. After shooting a hole in the windshield, appellant asked the victim if he thought appellant would shoot him. The victim stated that he did not and appellant shot him.
According to Mrs. Hamby, appellant told her that he had dumped the body and tried to burn the van.
Michele Cassidy was called to the stand, and she essentially corroborated what Mrs. Hamby testified appellant had said. According to Mrs. Cassidy, appellant told them that, after shooting through the windshield, the victim, making a dare, told appellant that he would not shoot the victim. Appellant then shot the victim.
According to Mrs. Cassidy, appellant further stated that he took the money he had from the victim and that was all the money that he had since leaving New Orleans.
Betty Cook was at the Omelet Shoppe in Rainbow City the night of March 6, 1981. While there, she saw appellant come into the restaurant and use a phone. She overheard appellant say, "I got it," or "I got him," and also say, "You got to help me get rid of the gun." He then slammed the phone down and walked outside and got in *Page 786 
a black van. She noticed that appellant had blood on his shoes, coat and pants.
Loretta Moore, the victim's wife, testified that she saw the victim in New Orleans on March 6, 1981, just prior to his leaving for Ohio. Generally the victim followed a route through Gadsden to get to Ohio. Her husband had between $800 and $1,000 with him. He also left with a .38 pistol. Her husband left in a black van that had no hole in the windshield. According to Mrs. Moore, her husband never drank.
A.B. McLaughlin, night clerk for the Redwood Inn in Rainbow City, checked appellant into the motel the night of March 6, 1981. He identified a registration card appellant had signed. According to Mr. McLaughlin, appellant was driving a black van.
Pat Wetzel, of the Alabama Bureau of Investigation, was called to testify. Mr. Wetzel took photographs of the scene where the body was found. He identified these photographs as well as some photographs of the black van.
Mr. Wetzel had tried to find appellant after appellant became a suspect. He learned that appellant had left New Orleans for Texas. He later arrested appellant at a local bar in Etowah County.
Dr. Joseph Embry of the State Department of Forensic Sciences, performed the autopsy on the victim. According to Dr. Embry, the victim had a gunshot wound in the head. The bullet had entered on the back right side of the head and exited on the left side.
Dr. Embry identified a number of slides he had made of the wound. The slides were introduced into evidence and Dr. Embry explained them from the stand. In his opinion, the victim was killed by a gunshot wound in the head. Dr. Embry was also of the opinion that the victim was highly intoxicated when shot.
Lawden Yates, a firearms expert for the Department of Forensic Sciences, testified that the gun was shot at least three or four feet from the victim's head.
Loretta Moore was recalled by the State. She identified photographs of the van found in Cullman County as the one belonging to her and her husband. Her husband was in possession of the van when he left New Orleans.
After the State rested, appellant testified in his own defense. According to appellant, he was given a ride by the victim in Louisiana. The victim was drinking heavily. After drinking a while with the victim, the victim asked him if he wanted another beer. When appellant replied that he did not, the victim pointed a gun at appellant and began pulling the trigger.
Appellant seized the gun and the victim told appellant it was not loaded. Appellant fired through the windshield. The victim said he had another gun that was loaded and reached under the seat. At that time appellant shot the victim. This occurred a few minutes after they had left Birmingham going toward Gadsden, according to appellant.
Pat Wetzel was recalled by the defense. He answered various hypothetical questions posed by appellant concerning the county a vehicle would be in travelling at a certain speed for a certain amount of time.
Appellant's first contention is that the cumulative effect of leading questions by the State prevented him from receiving a fair trial.
A careful review of the record convinces us the State's questions were not so prejudicial as to prevent a fair proceeding. Some of the questions were indeed leading but the trial court generally sustained objections to that effect. In other instances, the prosecutor's questions were properly within the discretion of the trial court. Since no single instance of alleged improper conduct constituted reversible error, we do not consider the cumulative effect to be any greater. Sprinkle v. State, Ala.Cr.App., 368 So.2d 554, cert. denied, Ala., 368 So.2d 565 (1978).
The fact that the State, after its leading questions were sustained, asked general non-leading questions that elicited *Page 787 
the same answers as the leading questions called for did not result in such prejudicial error as to require reversal. Rule 45, Alabama Rules of Appellate Procedure. We see no other way the State could have elicited testimony after objections to the leading questions were sustained.
Appellant complains of the introduction into evidence of certain photographs he claims were introduced merely to inflame the jury and prejudice appellant. We find no merit in this argument.
There were two sets of photographs appellant found objectionable. The first set, consisting of four photographs, depicted the body as it was originally found when dumped from the van. The second set, consisting of three slides, depicted the wound that resulted in the victim's death. These slides were used to aid Dr. Embry's testimony as to the autopsy, cause of death, and location of the wound.
Appellant contends that the photographs were merely cumulative and of no probative value. He further contends that the second set was inadmissible because of changes of the body consisting of cleaning the wound area and shaving the head for better viewing. Appellant also argues that Dr. Embry should not have been allowed to explain the slides.
We do not believe that the photographs were merely cumulative and of no probative value. The first set of photographs was of the body as it appeared when found. There was testimony that the victim's pants pockets had been pulled inside out and loose change was around the body. This tended to show the victim had been searched for money, indicating a possible motive for the crime. This set was introduced not so much to show the wound and cause of death, but to show the scene of the crime and the appearance of the victim in this scene.
The second set, focusing on the wound per se, was introduced for the specific purpose of showing the exact cause of death and to show the path of the bullet. These slides were used as an aid to the doctor who performed the autopsy and determined the cause of death.
Photographs may be properly used to corroborate and illustrate the testimony of a toxicologist as to the number and locations of the wounds. McAdams v. State, Ala.Cr.App.,378 So.2d 1197 (1979). Likewise, it is not error for a physician to testify and explain about photographs of a victim's wound.Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960). Also, the fact that the wound was cleaned and shaved was not a material change in the condition of the body which rendered the photographs inadmissible. Dr. Embry explained that the wound was only shaved and cleaned to make the wound more visible and there was no change made to the wound itself. Alabama courts have previously held that photographs are admissible where the wounds have been cleaned, Ala.Cr.App., Butler v. State,373 So.2d 347 (1979); where the wounds have been sutured, Hurst v.State, 277 Ala. 686, 174 So.2d 325 (1965); and where surgery marks were made subsequent to infliction of the wound, Voudriev. State, Ala.Cr.App., 387 So.2d 248, cert. denied, Ala.,387 So.2d 256 (1980).
Finally, photographic entries which tend to prove or disprove a disputed or material issue, illustrate or elucidate relevant evidence, or to corroborate or disprove other evidence, are properly admissible, even where such exhibits were merely cumulative and demonstrative of undisputed facts. Craft v.State, Ala.Cr.App., 402 So.2d 1135 (1981).
For these reasons, we find that the photographs were properly admitted. Craft, supra.
Appellant asserts that the trial court erred in allowing Sergeant Pat Wetzel to compare the tag numbers on State exhibits that had not yet been introduced into evidence. Sergeant Wetzel was asked to call out the tag number on State's Exhibit 10, a picture of the victim's black van. After appellant objected, Sergeant Wetzel recited the number. *Page 788 
Subsequently, Sergeant Wetzel was asked to look at State's Exhibit 15, a motel registration card appellant had filled out the night of the shooting. He read the tag number which was the same number as that on the tag of the van. Appellant then objected, stating that Exhibit 10 was not in evidence yet. The court instructed the jury that it was not going to allow the registration cards into evidence and the jury was to disregard any testimony relating to the cards.
We cannot review appellant's contention that the tag number was improperly read from an exhibit not in evidence. Appellant made a specific objection to the reading of the tag number based on grounds that no predicate had been laid showing that the van in the photographs was the victim's van. Nothing was mentioned of the fact that the photograph was not in evidence. After the State assured the court that Mrs. Moore would show the connection when she testified, the court allowed the testimony.
The admission of evidence before other evidence which would make it relevant is offered so that it would be "connected" or "tied up" is within the discretion of the trial court. It is well settled that the trial court has broad discretion in determining the order of proof in a criminal prosecution. Burksv. State, Ala.Cr.App., 353 So.2d 539 (1977). Thus, appellant's specific objection was properly overruled, and specific grounds waive all other grounds. The trial court cannot be put in error for admitting evidence though it was subject to another objection. Ward v. State, Ala.Cr.App., 376 So.2d 1112, cert. denied, Ala., 376 So.2d 1117 (1979); Sprinkle v. State, Ala.Cr.App., 368 So.2d 554, cert. denied, Ala., 368 So.2d 565
(1978).
Appellant did base his objection to the reading of the tag number off the registration card on the grounds that the card was not yet in evidence. However, the objection was untimely. The State had asked the question and received an answer before appellant objected to the reading of the tag number. No subsequent motion to exclude the reading of the tag number was made. There was, therefore, no error in the trial court's action. Wright v. State, Ala.Cr.App., 380 So.2d 398 (1980).
Moreover, the trial court subsequently determined that the cards were not to be admitted into evidence and instructed the jury to disregard testimony concerning them. Such action cured any possible error concerning the comparison of the tag numbers. Ala. Digest, Criminal Law, Key Number 1169.5 (1).
In a related matter, appellant objected to the testimony of Mrs. Moore concerning the State's Exhibits 10, 11 and 12. These exhibits were photographs of the victim's van. Appellant contends that Mrs. Moore was improperly allowed to give testimony based on these exhibits before they were introduced into evidence.
The following testimony appears in the record:
 "[State]: Mrs. Moore, I believe you were put under oath the other day and you are still under oath. I want to ask you one question here. I want you to look at State's Exhibits 10, 11 and 12, and I will show you them in that order, and ask you if you can identify that? [Emphasis added.]
"A. Yes, sir.
"MR. WRIGHT: Those are not in evidence yet.
"Q. What is that?
"A. That's our van.
"Q. Okay.
 "MR. WRIGHT: I object to what it is, if it please the Court. Now, if it comes in —
 "ASSISTANT DISTRICT ATTORNEY MOORE: That was the testimony that is —
"THE COURT: Overruled.
"Q. That is whose van?
 "MR. WRIGHT: I object to that. There is higher and better evidence.
"THE COURT: Do you recognize that picture?
"A. Yes, sir.
"THE COURT: All right.
 "Q. Is that the van that your husband left Louisiana in? *Page 789 
"A. Yes, sir.
 "MR. WRIGHT: Note our objection, if it please the Court.
"THE COURT: Overruled.
"Q. Let me show you the photograph —
 "MR. WRIGHT: For the record purposes, let me state my objection.
 "THE COURT: His question was, was that the van that your husband left Louisiana in. Not ownership now. The question was, I believe, as —
 "MR. WRIGHT: I still object to it. "THE COURT: Overruled.
"MR. WRIGHT: We except to the Court's ruling.
"Q. And was that the same van?
"A. Yes.
 "Q. Okay. Now, the last time you saw that van, was that hole in the windshield?
"A. No.
 "ASSISTANT DISTRICT ATTORNEY MOORE: Your Honor, we would offer State's Exhibits 10, 11 and 12 into evidence at this time."
Exhibit 12 was introduced into evidence while Exhibits 10 and 11 were withdrawn by the State.
A careful reading of this testimony convinces us that Mrs. Moore was merely identifying the photographic exhibits. Such photographs, before being admitted, must be properly authenticated by identifying the subject matter depicted. Hurstv. State, 54 Ala. App. 254, 307 So.2d 62 (1974), cert. denied,293 Ala. 548, 307 So.2d 73 (1975).
Appellant further contends that, because the photographs were identified but only Exhibit 12 was introduced into evidence, Mrs. Moore's subsequent testimony identifying the van as her husband's was based on photographs not in evidence. Exhibit 12 is a photograph of the front side of the van, while Exhibit 11 is a photograph of the side, and Exhibit 12 is a photograph of the back.
The following transaction is found in the record:
 "Q. Mrs. Moore, I showed you three pictures of this van. And I want you to take those Exhibits 10, 11 and 12 and look at them and tell me how you can identify that that is the van that your husband left Louisiana in.
 "MR. WRIGHT: I object to it, if it please the Court. It calls on mental operation. Just completely turns the witness loose to say whatever comes in her mind. Plus, it's my understanding that the State has withdrawn 10 and 11 from consideration here.
 "ASSISTANT DISTRICT ATTORNEY MOORE: Your Honor, they are not offered into evidence but as a point of evidence they were identified as taken — three pictures taken of the same van and she is telling how she knows it's her van.
"MR. WRIGHT: I object to it.
"THE COURT: All right.
 "MR. WRIGHT: Now, wait. He's leading her into an answer, I guess, that it's her van. That's the only way I understand the question. I don't see anything leading about that. Overruled. You have your exception. Ma'am, you can testify.
"A. It's our van. It's got the mag wheels and all.
 "THE COURT: I think the question was, how can you identify, looking at that that as being that particular van?
 "A. I know it's our van. I drove the van. We worked on the van.
"Q. Okay. You recognize the wheels, you stated?
"A. Yeah.
 "MR. WRIGHT: I object to that, if it please the Court.
 "THE COURT: She had just said — I believe her statement was that she recognized the mag wheels.
"A. We had the wheels put on it.
"THE COURT: All right. Anything else?
 "A. Well, the louvers, we put the louvers on the back window. This one shows the louvers.
 "MR. WRIGHT: Note our objection, if it please the Court.
"A. — they were plastic louvers." *Page 790 
The record does show that Mrs. Moore partially based her identification of the van as that of her husband's on Exhibit 10, a photograph of the back of the van which was not introduced into evidence. However, it is also clear that she based her identification of the van on Exhibit 12, which shows the "mag" wheels.
Although we are not convinced that such testimony was improper [See Reese v. State, 49 Ala. App. 167, 269 So.2d 622
(1972)], any possible error in allowing this testimony was not so prejudicial as to warrant reversal.
Our Supreme Court has held that testimony apparently illegal may be rendered prejudicially innocuous by subsequent or prior legal testimony to the same effect or from which the same facts can be inferred. Yelton v. State, 294 Ala. 340, 317 So.2d 331
(1974).
In the instant case, the issue was whether the partially burned van found in Cullman County was in the victim's possession when he was shot, and there is ample legal evidence tending to prove that.
While viewing the three photographs for identification and authentication purposes, Mrs. Moore testified that the van was "our" van, obviously a reference to her and her husband. Mrs. Moore further stated that the van in the photographs was the van her husband left in. After the court asked her if the van in the photograph was in her husband's possession when he left, she stated that it was. Finally, and most importantly, Mrs. Moore identified the van as her husband's because of the "mag" wheels they had put on. Exhibit 12, the photograph admitted into evidence, clearly shows the wheels of the van.
Furthermore, the Yelton court also held that a defendant is not prejudiced by testimony of a witness which related to uncontradicted matters. Appellant never offered any evidence contradictory of the evidence that the van was not the victim's. If anything, appellant's only evidence on the matter tended to support the proposition. Appellant described the automobile appellant was driving as a black van. He also admitted shooting a hole through the windshield. The van depicted in Exhibit 12, the photograph introduced into evidence, and identified by Mrs. Moore as depicting her husband's van, was black and had a hole in the windshield.
Appellant argues that there was insufficient evidence of venue in Etowah County.
The body was found in Etowah County on the side of a road. There was a good deal of fresh blood on the victim, and the blood had run off the body onto the surrounding ground.
William Bragg, the Etowah County Coroner, testified that death from the gunshot would have been almost instantaneous. Dr. Embry corroborated that testimony.
In Allen v. State, Ala.Cr.App., 374 So.2d 447, which was factually very similar to the present case, this court stated:
 "Under Alabama law venue is in the county where the offense was committed, and it may be established by circumstantial evidence. Section 15-5-2, Code of Ala. 1975; Willcutt v. State, 284 Ala. 547, 226 So.2d 328
(1969).
 "The body was found in Winston County approximately fifteen to twenty feet off a one lane gravel roadway. There were splatter marks of blood between the body and the roadway.
 "John H. Kilburn, a State Toxicologist, testified that the death was caused by a shotgun wound to the victim's back. He stated that the victim would have died in less than five minutes and would have lost a large amount of blood.
 "Jerry Thomas, an investigator for the Alabama Department of Public Safety, testified that he was present at the crime scene when the body was moved. He stated that when the body was turned over a large amount of blood flowed from the wound in the victim's back. He estimated the amount to be a quart.
 "In the case of State v. Fabian, Miss., 263 So.2d 773, 775 (1972), it was stated: `[T]he finding of a dead body in a particular *Page 791 
county raises a presumption, or supports an inference, that the killing took place there.' The opinion in Fabian, supra, goes on to quote from 22 C.J.S. Criminal Law § 185 (17):
 "`. . . Aside from any statutory provision, the finding of a body in a county would warrant a finding that the murder was committed in that county. One should not be permitted to escape punishment for murder because he is clever enough to conceal the place where the victim was killed or died. . . .'
 "Proof of venue is sufficient in a criminal case if, from all the facts and circumstances adduced, venue can be reasonably inferred by the jury. Tanner v. State, 37 Ala. App. 256, 66 So.2d 827 (1952), reversed on other grounds, 259 Ala. 306, 66 So.2d 836.
 "Under the facts adduced in the instant case, the jury may have reasonably inferred that the instant killing took place in the county where the body was found. Clearly a jury question was presented. Willcutt, supra."
The fact that appellant's testimony conflicted with this evidence was a fact for the jury's determination. Stokes v.State, Ala.Cr.App., 373 So.2d 1211, cert. denied,373 So.2d 1218 (1979).
Appellant contends that there was a fatal variation between the pleading under the robbery count of the indictment in that proof of ownership of the van was never offered.
The relevant portion of the indictment reads:
"Count Two
 "[James D. Holm] . . . did, in the course of committing a theft of one (1) 1978 model, Dodge van, the property of Charles E. Moore, use force against the person of Charles E. Moore . . ."
Appellant contends that, because of the particular language used in the indictment, title or ownership must be proven. There is no merit to this assertion.
In Burke v. State, 44 Ala. App. 379, 209 So.2d 859, concerning the property also read, "[the defendant took] . . . the property of [the victim]." In addressing this issue, the court stated:
 "In Riggens v. State, 44 Ala. App. 275, 207 So.2d 141, this court stated in part as follows:
 "`Though animus furandi is its motive, robbery is basically a crime against the person. Hence, the indictment need only name the person having the immediate special property of the thing which the robber seeks to take. We believe that this was the common law. See Rex v. Harding (1929), 21 Cr.App.R. 166, wherein the 1800 case of Rex v. Deakin and Smith, 2 East P.C. 653, is quoted with approval.
 "`The description of the owner of the property taken is needful only to exclude the possibility of the taker's being accused of taking that to which he had some right. * * *'
 "Thus, whether or not there is a variance between the indictment and proof as to ownership of the property involved in the robbery, is not material so long as the offense is described with sufficient certainty to identify the act of robbery and to establish that the property was in the immediate actual possession of the person robbed. Riggens v. State, supra."
There was adequate evidence of possession. Mrs. Moore, after identifying photographs of the abandoned van as belonging to her and her husband, testified that her husband had possession of the van when he left New Orleans on March 6.
Appellant's final contention is that the trial court's instruction regarding verdict forms was incorrect. The following instructions were given:
 "The form of your verdict will be in one of the following: `We, the Jury, find the Defendant guilty of Murder as charged in Count One of the Indictment. We, the Jury, find the Defendant guilty of Manslaughter. We, the Jury, find the Defendant guilty of Robbery in the First Degree as charged in Count Two of the Indictment. We, the Jury, find the Defendant not guilty of Robbery as charged *Page 792 
in Count Two of the Indictment. We, the Jury, find the Defendant not guilty under Count One of the indictment.'
 "As soon as you have reached your verdicts in this case, with respect to these Counts, if you will notify my Bailiff, he will contact me."
At trial, appellant requested that a single form of "not guilty" also be included besides the separate "not guilty" forms under each count. The trial court refused, stating that it did not wish to confuse the jury. We do not see how appellant was prejudiced in any way by the giving of separate "not guilty" forms for both counts of the indictment but not a single "not guilty" form. We also agree that one single form would merely be redundant and possibly confusing, since appellant was indicted and tried under the separate and independent crimes.
Appellant also argues on appeal that reversible error was committed when the trial court gave the verdict instruction, "We, the Jury, find the defendant not guilty under Count One . . ." instead of "We find the defendant not guilty of murder under Count One," while the other verdict forms specifically mentioned the crime. He argues this placed more emphasis on a guilty verdict than not guilty. We do not believe such absence is reversible error. Rule 45, Alabama Rules of Appellate Procedure.
Moreover, we cannot review these grounds on appeal. Appellant failed to base his objection on these grounds at trial, thus no error on these grounds was preserved for review. Ward, supra;Sprinkle, supra.
We have searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.